IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| SHERYL L. BJORNSON, | ) | Case No. CV 04-0285-N-MHW |
|  | ) |  |
|  | ) |  |
| Plaintiff, | ) | **MEMORANDUM DECISION** |
|  | ) | **AND ORDER** |
| v. | ) |  |
|  | ) |  |
| DAVE SMITH MOTORS/FRONTIER | ) |  |
| LEASING AND SALES, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
| _____ | ) |  |

Currently pending before the Court is Defendant's Motion for Summary Judgment

(Docket No. 40), filed April 17, 2007 and Defendant's Motion to Strike Portions of the Affidavit

of Sheryl Bjornson (Docket No. 51), filed May 25, 2007.  For the reasons that follow, the Motion

for Summary Judgment will be granted in part and denied in part and the Motion to Strike

Portions of the Affidavit also will be granted in part and denied in part.

**I.**
**Background**

On June 8, 2004, Plaintiff Sheryl L. Bjornson ("Plaintiff") brought this action against

Defendant Dave Smith Motor/Frontier Leasing and Sales ("Defendant") alleging sexual harassment, gender discrimination and retaliation under Title VII of the Civil Rights Act. Plaintiff's causes of action stem from allegations that the Dave Smith Motors general manager, Joe Orsi ("Orsi"), made sexually derogatory, disparaging and contemptuous remarks about Plaintiff and/or her family.  Plaintiff alleges she was retaliated against and terminated from her employment after she made complaints about Orsi's conduct.

Plaintiff began working for Dave Smith Motors/Frontier Leasing and Sales ("Dave Smith Motors") in Coeur d'Alene, Idaho on May 9, 2001 as a used car salesperson.  (Complaint, ¶ 3.) Plaintiff received Dave Smith Motors' employee manual which contained a sexual harassment policy that outlined the manner in which employees were to voice complaints of sexual harassment to management.  (Affidavit of Phillip J. Collaer in Support of Defendant's Motion for Summary Judgment, "Collaer Aff.," Ex. 2, Exhibits to Bjornson Deposition, Ex. 5.)

The employee manual also contained a provision which stated that if the employee's job responsibilities included "driving company or customer vehicles," he or she "must have a valid driver's license and...be insurable by Dave Smith Motors/Frontier Sales insurance carrier." (Bjornson Dep., Ex. 4.)  If an employee whose job requirements include having a valid driver's license has their license suspended, their employment is terminated.  (Affidavit of Bonnie Gunderson in Support of Defendant's Motion for Summary Judgment, "Gunderson Aff.," ¶ 4.)

During Plaintiff's time at Dave Smith Motors in Coeur d'Alene, Orsi suggested to her that they go to Seattle, to a basketball game, and that she would enjoy Rose Lake where he had a home.  Plaintiff declined these invitations.  (Bjornson Dep., pp. 135-36; Affidavit of Sheryl Bjornson in Opposition to Defendant's Motion for Summary Judgment, "Bjornson Aff.," ¶ 4.)

**Memorandum Decision and Order - Page 2**

Gary Leat, a former employee of Dave Smith Motors during the relevant time period, also stated that Orsi would flirt with and pursue some of the female employees at Dave Smith Motors. (Affidavit of Gary Leat, "Leat Aff., ¶ 9.)

In the summer of 2001, Bjornson was in the backseat of a vehicle that Orsi was driving when she witnessed him rub another female employee's inner thigh who was sitting in the front-seat.  (Bjornson Aff., ¶ 3.)  At some point during her employment, Plaintiff advised her supervisor, Mary Crawford, of Orsi's inappropriate conduct.  Ms. Crawford suggested that Plaintiff keep track any future incidents involving Mr. Orsi.  (Bjornson Dep., pp 130-31; Bjornson Dep., Ex. 8.)  Many of Plaintiff's complaints regarding Orsi were said and done to third parties and then later related to Plaintiff by her coworkers.  These include: telling her coworkers that Plaintiff must be having sexual relations with a fellow employee, Hector, because they were spending so much time together; telling Kelly Van Winkle, another employee, that he was going to have sex with Carrie, a female employee, and that it would become "the rumor of the week;" relaying details of his sex life to Mary Crawford; making fun of Plaintiff to other employees for eating so much at an "all-you-can-eat" restaurant and stating that she must be sleeping with Gary Leat, the coworker she accompanied to the restaurant; and telling the paint store next to the car dealership not to extend credit to Plaintiff because she did not pay her bills. (Gunderson Aff., Ex. 1; Bjornson Dep., Ex. 8; Bjornson Dep., pp. 120-21, 132.)  Gary Leat confirmed that Orsi often bragged about his sexual exploits and would use vulgar and sexually explicit language in front of female employees.  (Leat Aff., ¶¶ 6-9.)

Bjornson also testified that Orsi often used the "f" word around her and when referring to her family, yelled at her in front of customers, and made a comment about a woman's chest in

front of her.  (Bjornson Dep., pp. 117-122; 129.)  One female coworker told Plaintiff the way

Orsi touched her made her feel uncomfortable.  (Bjornson Dep., Ex. 8; Gunderson Aff., Ex. 1.)

Additionally, at an offsite sale, Orsi stuck his finger through the zipper of his pants to simulate a

penis.  A photograph was taken, which Plaintiff saw when it was later shown around the

dealership.  Plaintiff testified that she recalled the photograph to also simulate oral sex which

Orsi denies.  (Deposition of Joe Orsi, "Orsi Dep.," pp. 27-28; Deposition of Karen Armstrong,

"Armstrong Dep.," pp. 29-30; Deposition of Ray Flaherty, "Flaherty Dep.," p. 48; Bjornson

Dep., pp. 121-22; Bjornson Dep., Ex. 8.)

Plaintiff testified that Orsi would often make comments behind her back about her attire

and personal appearance.  (Bjornson Dep., p. 117.)  Around April 2002, Orsi and another

coworker suggested that Plaintiff change her hairstyle.  (Gunderson Aff., Ex. 1.)  On March 8,

2003, Plaintiff was given a written warning from Mary Crawford regarding her unprofessional

dress attire.  (Bjornson Dep., Ex. 6.)  Both of these incidents were very upsetting to Plaintiff who

did not see anything wrong with her hairstyle or her attire.  (Gunderson Aff., Ex. 1.)  Mary

Crawford and Bonnie Gunderson both testified that there were many occasions where Plaintiff's

attire and appearance were an issue and inappropriate.  (Crawford Dep., pp. 34-36; Gunderson

Dep., pp. 159-160.)

After receiving the written warning, Plaintiff approached Bonnie Gunderson, head of the

human resources department, while she was wearing the same outfit she had been wearing the

day she received the warning.  Ms. Gunderson informed Plaintiff she thought the outfit was

appropriate.  Plaintiff also complained to Ms. Gunderson about how Orsi was mean to her and

always "after her," and that his complaints about her hair and attire were upsetting to her,

especially since "[she] was just trying to do [her] job."  (Bjornson Dep., pp. 105-110.)

On August 20, 2003, Plaintiff submitted a letter of complaint to Ms. Gunderson.  The letter noted that Plaintiff had endured an intimidating and antagonizing environment, mostly inflicted by Orsi.  Attached to the letter, Plaintiff submitted her journal where she had noted many of the incidents mentioned above.  (Bjornson Dep., pp. 138-39; Exs. 7, 8.)  The letter and the journal entries do not contain any allegations that Orsi ever touched Plaintiff in a sexual manner or made unwanted sexual advances towards her.  (Bjornson Dep., pp. 133-37.)

Ms. Gunderson investigated Plaintiff's complaint and Orsi was given a written warning addressing his profanity, words and actions that could be construed as sexual in nature. Defendants offered Plaintiff the opportunity to transfer from Coeur d'Alene to the Kellogg, Idaho location of the dealership.  (Gunderson Aff., ¶ 12; Flaherty Dep., pp. 48-51.)  Defendants contend that Plaintiff agreed to accept the transfer to Kellogg but Plaintiff claims she was simply told to show up for work in Kellogg the following Monday.  (Flaherty Dep., pp. 63-67; Bjornson Dep., pp. 140-42.)  On August 27, 2003, Plaintiff signed a statement that she was satisfied with the way Dave Smith Motors had handled her complaint.  (Bjornson Dep., Ex. 9.)  Bjornson claims that she believed if she did not sign the statement she would not have been allowed to work. (Bjornson Aff., ¶ 9.)  After she was transferred to Kellogg, she attempted to get her notebook from the Coeur d'Alene dealership which contained the names and telephone numbers of potential customers.  The notebook was returned to her a month after her transfer.  She alleges this resulted in a loss of sales.  (Bjornson Dep., pp. 167-68; Gunderson Aff., Ex. 2.)

Plaintiff claims that working in Kellogg caused her inconveniences such as having to drive further to work and the fear of potentially having to drive in poor conditions during the

winter months.  She also claims that there were no advantages in Kellogg as far as professional

advancement or amount of sales.  She did state she had a good working relationship with her

supervisors there.  (Bjornson Dep., pp. 144-52.)  Mr. Flaherty reviewed Plaintiff's earnings for

the years of 2003 and 2004 and noted that her average monthly salary was higher when she

worked in Kellogg.  (Affidavit of Ray Flaherty in Support of Defendant's Motion for Summary

Judgment, "Flaherty Aff.," ¶ 4.)

On or around November 15, 2003, Plaintiff was charged with driving under the influence.

The following Monday she reported the arrest to her supervisors.  In January 2004, she pled

guilty to the DUI and learned her license would be suspended as a result.  On January 4, 2004,

her license became invalid because of the suspension.  On January 5, 2004, her employment was

terminated.  (Bjornson Dep., pp. 152-58, 163-64; Bjornson Dep., Ex. 10.)  Ms. Gunderson

attested that no salesperson whose job description included driving company or customer cars

has ever continued their employment with Dave Smith Motors after management was informed

the person had received a DUI and lost their driving privileges.  She stated this was precisely the

reason for Plaintiff's termination.  (Gunderson Aff., ¶¶ 6-11; Gunderson Dep., pp. 59-60.)

Neither Ms. Gunderson nor Mr. Flaherty called to confirm that Plaintiff would be uninsurable

because of her DUI conviction, but assumed from past experiences with employees who had

been convicted of driving under the influence that she would be uninsurable.  (Gunderson Dep.,

p. 206; Flaherty Dep., pp. 72-73.)  After her termination, Plaintiff was denied employment at

another car dealership because she did not hold a valid driver's license.  (Bjornson Dep., pp. 59-

60.)

Plaintiff testified that her supervisor in Kellogg, Lynn Pfaff, told her she was terminated

because of her complaint against Orsi, not because of her DUI conviction.  (Bjornson Dep., pp. 163-64.)  After her termination, Plaintiff contacted Universal Underwriters Insurance Company, the company that provided insurance to Dave Smith Motors.  Plaintiff claims she was informed that the insurance company did not tell employers to fire employees who received DUIs although that was the practice of many companies.  (Bjornson Aff., ¶ 10.)  A letter from the insurance company to Dave Smith Motors on November 21, 2003, after Plaintiff's DUI arrest, stated that Plaintiff was still insurable at that time.  However, it is highly unlikely that the insurance company knew when it sent this letter that six days earlier, that Plaintiff had been arrested for a DUI.  It was not until January 4, 2004 that Plaintiff pled guilty to this charge and her license was suspended.  (Affidavit of April M. Linscott in Opposition to Defendant's Motion for Summary Judgment, "Linscott Aff.," Ex. 2.)

On February 6, 2004, Plaintiff filed a complaint with the EEOC.  On March 12, 2004, the EEOC issued a right-to-sue letter.  (Complaint, ¶ 18.)

## II.
## Defendant's Motion for Summary Judgment

**A.    Standard of Review**

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. Rule 56, which provides in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

When reviewing a motion for summary judgment, the proper inquiry is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (1993).  A moving party who does not bear the burden of proof at trial may show that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  It is not enough for the [non-moving] party to "rest on mere allegations or denials of his pleadings." *Id.*  Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.,* at 250.  "When determining if a genuine factual issue . . . exists, . . . a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability." *Id.,* at 254.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

     In determining whether a material fact exists, facts and inferences must be viewed most favorably to the non-moving party.  To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th. Cir. 1981).

     The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of

material fact." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 500 (9th Cir. 1992). The Ninth

Circuit has found that in order to resist a motion for summary judgment,

> the non-moving party: (1) must make a showing sufficient to
> establish a genuine issue of fact with respect to any element for
> which it bears the burden of proof; (2) must show that there is an
> issue that may reasonably be resolved in favor of either party; and
> (3) must come forward with more persuasive evidence than would
> otherwise be necessary when the factual context makes the non-
> moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund,* 882 F.2d 371,

374 (9th Cir. 1989).

## B.     Sexual Harassment Claim

Under Title VII, it is "an unlawful employment practice for an employer to fail or refuse

to hire or to discharge any individual, or otherwise to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges or employment because of such

individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII's

prohibition not only applies to situations with tangible or economic discrimination but also to

situations where sexual harassment is so severe or pervasive that it alters the conditions of the

plaintiff's employment and creates a hostile work environment. *Faragher v. City of Boca Raton*,

524 U.S. 775, 786 (1998). To show that Plaintiff was subject to a hostile work environment, she

must prove that: (1) she was subjected to verbal or physical conduct of a sexual nature; (2) the

conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the

conditions of her employment and create an abusive work environment. *Porter v. California

Dep't of Corrections*, 419 F.3d 885, 892 (9th Cir. 2005). A hostile work environment must be

found to be "both subjectively and objectively offensive, one that a reasonable person would find

hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).  In determining whether the work environment reaches the level where it is considered to be hostile or abusive, courts are directed to look at all the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems*, 510 U.S. 17, 23 (1993).  Simple teasing, comments and isolated incidents, unless extremely serious, will not amount to a hostile work environment.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Title VII is not designed to be a "general civility code."  *Id.*  The conduct must be extreme in order to amount to a change in the terms and conditions of employment.  *Montero v. AGCO Corp.*, 192 F.3d 856, 860 (9th Cir. 1999).

Many Title VII cases addressing the hostile work environment claim involve blatant sexual advances or comments and often physical contact.  In *Anderson v. Reno*, a case relied on by Plaintiff, the victim was referred to as "sexy" and "office sex goddess," comments were made by her supervisor about her sexual desirability and how he wanted sex from her, including that she "owed him," a coworker reminded her of their past sexual involvement and repeatedly suggested that they rekindle that relationship, another coworker patted her on the buttocks, and she received a sexually explicit cartoon, vulgar note and greeting card, among several other incidents.  190 F.3d 930, 933-34 (9th Cir. 1999).   In the United States Supreme Court case, *Faragher v. Boca Raton*, the Court held there was  a hostile work environment where supervisors touched plaintiff's buttocks, made demeaning references to women in general, made disparaging comments about plaintiff's body, commented on the bodies of other lifeguards and

beachgoers, and repeatedly touched the bodies of other female employees without invitations. 524 U.S. 775 (1998).

Defendant contends that Plaintiff's claim of sexual harassment is devoid of any allegation that Orsi touched her in a sexual manner, spoke to her in a sexually suggestive manner, or made unwelcome sexual advances and that Plaintiff has essentially admitted that her claim does not contain these types of allegations. *See* Bjornson Dep., pp. 133-35.   Rather, Defendant submits that Plaintiff's claim rests on the facts that Orsi was mean to her, used unprofessional language around the office, was allegedly involved in romantic interludes with other female employees and suggested that they spend time together outside the office.  Defendant maintains these allegations covering a span of two years and three months that they worked together are not extreme enough to amount to a hostile work environment.  Additionally, Defendant asserts that once Plaintiff made a complaint, it took prompt corrective action to remove her from an environment in which she did not feel comfortable.  As to the "informal" complaints Plaintiff made prior to the written one, Defendant points out that Plaintiff did not make any allegations about harassment of a sexual nature, rather those complaints addressed Orsi's management style and the way he interacted with her and other employees.

Plaintiff maintains that Orsi's invitations were of a romantic, sexual nature and that after rejecting these invitations, she was harassed.  Plaintiff contends this harassment included comments about her hair and attire, comments about Plaintiff having sex with other employees, the photograph of Orsi with his finger through the zipper of his pants, using the "f" word in reference to Plaintiff's family, making fun of Plaintiff and yelling at her in front of customers, and the comment to the paint shop that Plaintiff was not "credit-worthy."  Additionally, Plaintiff

**Memorandum Decision and Order - Page 11**

contends that Orsi rubbed the thigh of a female employee in front of her, bragged about his sexual exploits to other employees, and a female coworker told Plaintiff she was uncomfortable with the way Orsi touched her.

Plaintiff's allegations of verbal or physical conduct of a *sexual* nature is limited to Oris's three invitations to Plaintiff at the beginning of her employment, two comments to Plaintiff's coworkers that Plaintiff must be having sex with two male employees because she had been spending time with them, the photograph she saw of Orsi with his finger through the zipper of his pants, rubbing the thigh of a female employee in front of her, a coworker being uncomfortable with Orsi touching her, Orsi's comment about a woman's chest and his bragging about his sexual exploits to other employees that were related back to Plaintiff.  As mentioned, these incidents occurred over a two year and three month period of time.  Plaintiff has also submitted the affidavit of Gary Leat, a former Dave Smith Motors employee, who states that Orsi often viewed inappropriate material on his computer, told sexually explicit jokes, pursued female employees, and bragged about his sexual exploits.

Orsi's comments about Plaintiff's hair and attire were not alleged to be of a sexual nature or because of her gender but seem to stem from Orsi's disapproval of her attire in terms of compliance with the company's professional dress code,[1] as confirmed by Mary Crawford and Bonnie Gunderson.

Undoubtedly, Plaintiff was subjectively offended by Oris's behavior.   Orsi's behavior was highly inappropriate for the workplace, particularly the photograph and comments about his sex life as well as Plaintiff's, but whether the conduct was objectively so pervasive or severe as

---

[1]  This will be discussed further in section D, addressing Plaintiff's gender discrimination claim.

to alter the conditions or terms of the work environment is not entirely clear.  In comparison to cases like *Faragher v. City of Boca Raton*, the conduct here is not nearly as severe or pervasive. However, Plaintiff's allegations were not merely a few isolated incidents.

Many of the comments she found offensive were made her coworkers, never directly to Plaintiff, but were related back to her.   The Second Circuit has noted that comments made outside a plaintiff's presence *can* be relevant to a hostile work environment claim.  *Leibovitz v. NYC Transit Authority*, 252 F.3d 179, 190 (2nd Cir. 2001).  The Ninth Circuit has also noted that the sexual harassment of others is relevant and probative of defendant's general attitude of disrespect toward female employees and general objectification of them.  *Heyne v. Caruso*, 69 F.3d 1475, 1480 (9th Cir. 1995).  Gary Leat's affidavit does confirm that Orsi often made sexual jokes, bragged about his sexual exploits and viewed inappropriate material on his computer.

In viewing all of the facts in the record most favorably towards Plaintiff, the non-moving party, the Court finds there is sufficient evidence to create genuine issues of material fact as to the severity and pervasiveness of Orsi's conduct towards Plaintiff.  Whether the trier of fact will ultimately be persuaded by Plaintiff's hostile work environment claim is unknown.  At this stage, it is sufficient that the factual issues regarding severity *could* be reasonably resolved in Plaintiff's favor.  Summary judgment on Plaintiff's hostile work environment claim will be denied.

**C.     Retaliation**

Title VII prohibits employers from discriminating against an employee when the employee has opposed any practice made an unlawful employment practice by Title VII.  42 U.S.C. § 2000e-3(a).  To make out a prime facie case of retaliation, an employee must show that:

(1) she engaged in protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). Making an informal complaint to a supervisor constitutes protected activity. *Id*. at n. 3. If the plaintiff asserts a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. *Id*. at 1240. If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive. *Id*. A plaintiff can prove pretext by "directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003). A plaintiff must proffer "specific" and "substantial" evidence of pretext. *Id*.

The Ninth Circuit has defined an adverse employment action to be one that is "reasonably likely to deter employees from engaging in protected activity." *Id*. at 1243. The court in that case stated that adverse employment actions include: lateral transfers, dissemination of a negative job reference, exclusion from training to qualify for salary increases, a more burdensome work schedule, disproportionate reduction in the plaintiff's workload and salary, and elimination of a flexible start-time policy, among others. *Id*. at 1241, 1243-44. The court noted that ostracism and offensive statements did not constitute adverse employment actions. *Id*. at 1241, 1243.

The United States Supreme Court addressed the split among the circuits as to what constituted an adverse employment action, agreeing with the Seventh and District of Columbia Circuits that a "plaintiff must show that a reasonable employee would have found the challenged

action materially adverse...[meaning] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006). The Court emphasized the need to filter out trivial conduct and that the significance of any given act of retaliation will depend on the particular circumstances. *Id*. at 2415-16.

Plaintiff alleges three instances of retaliation. The first was after her initial complaint to her immediate supervisors, when she alleges Orsi's treatment of her worsened. The second alleged act of retaliation was following her written complaint when she was transferred to the Kellogg dealership. The third allegation of retaliation is her termination.

As to Plaintiff's first claim of retaliation, that Orsi's treatment of her worsened after her initial complaints, the Court first notes that these complaints, one that Orsi was "mean" to her and was always "after to her" and the other that his comments and complaints about her unprofessional attire were upsetting her, do not amount to protected activity. She was not making a complaint of sexual harassment, or some other complaint of conduct that is prohibited by Title VII. Secondly, the Ninth Circuit has found that offensive statements and ostracism do not amount to adverse employment actions. *See Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061 (9th Cir. 2003).

As to the Kellogg transfer, Defendant argues that Plaintiff has not established the transfer was objectionable or that she was harmed in any way by it. Defendant contends that Plaintiff accepted the transfer and signed a statement that she was satisfied with the way her complaint was handled. It is submitted that Plaintiff did not suffer any reduction in pay or benefit, she was not forced to assume a different set of job responsibilities, and that Plaintiff appeared to enjoy

working in Kellogg and never complained about it.  As to Plaintiff's termination, Defendant maintains she was terminated because she received a DUI and her license was suspended.  Her job duties required that she have a valid driver's license and when she no longer did, her employment was terminated, consistent with its employment manual.

Plaintiff contends the transfer to Kellogg was an adverse employment action because she opposed the transfer and it led to an increased commute to work and more time away from her family.  She also believed there was less opportunity to advance and to make sales at the Kellogg dealership.   Plaintiff maintains she has satisfied the causal link element because she was transferred just one or two days after making her formal written complaint about Orsi.

Plaintiff also contends that her termination was in retaliation for the same complaint that led to the transfer.  She claims her DUI was a pretext for the true reason for her termination, her complaint about Orsi.  Plaintiff maintains that it was a relatively short period of time between her complaint and termination, approximately four months.  She also claims the facts that Defendant did not check whether Plaintiff was uninsurable and that Lynn Pfaff told her that she was fired because of her complaint regarding Orsi both demonstrate pretext.

As to Plaintiff's retaliation claim regarding her transfer, she was engaged in protected activity immediately prior to her transfer, she had just made a written complaint which included allegations of sexual harassment.  The first element is satisfied.  The third element of the retaliation claim is also satisfied, the transfer occurred within a day or so of the complaint and therefore a sufficient causal link can be inferred.

However, the second element is not met.  The transfer in this case does not amount to being an adverse employment action.  The record supports Defendant's contention that Plaintiff

**Memorandum Decision and Order - Page 16**

agreed to the transfer.  After Plaintiff had made her formal complaint against Orsi and the

company deemed that his termination was not warranted by the complaints made, Plaintiff asked

how she could continue to work with Orsi.  The dealership then gave her the option of

transferring to Kellogg, which she did.  While she worked in Kellogg, she never complained and

from all outward appearances, seemed to enjoy working there.  Additionally, Ray Flaherty

attested that Plaintiff had a higher average salary while at the Kellogg dealership.  (Flaherty Aff.,

¶ 4.)

   Regarding Plaintiff's termination, it occurred approximately four months after she had

made her written complaint and been transferred.  This is does not lead to a strong inference of

causal link based on timing alone.  Additionally, even if a causal link was established, Defendant

has articulated a nondiscriminatory reason for Plaintiff's termination, her DUI conviction.

Plaintiff's job responsibilities dictated that she must have a valid driver's license.  Plaintiff was

terminated the day she pled guilty to her DUI charge and her license was suspended.  Defendant

submitted evidence that when it became aware of other employees who had their licenses

suspended, those employees were terminated.  Plaintiff's attempts to establish pretext do not

overcome Defendant's motion for summary judgment on this aspect of the claim.  One of the

requirements of Plaintiff's job was to hold a valid driver's license.  When she no longer had one,

she was terminated, just as several employees prior to her had been when the company became

aware that their licenses had been suspended.  A hearsay statement from Lynn Pfaff, the fact that

Defendant did not call to confirm whether Plaintiff was still insurable, and a letter from the

insurance company before her license was suspended are not sufficient enough to establish

pretext.  Defendant's proffered explanation is credible and the Court is persuaded that legitimate

**Memorandum Decision and Order - Page 17**

business reasons, focusing on the uninsurability of Plaintiff following her DUI conviction, were the basis for her termination. The Court finds that Defendant has articulated a legitimate and nondiscriminatory reason for its termination and Plaintiff has not submitted substantial evidence of pretext convincing the Court otherwise. Summary judgment on Plaintiff's retaliation claim will be granted.

## D.      Gender Discrimination

A determination of whether Plaintiff's claim for gender discrimination should survive summary judgment is set forth in the familiar *McDonnell-Douglas Corp v. Green* burden shifting analysis. 411 U.S. 792 (1973). Plaintiff must establish a prima facie case of discrimination by proving that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) similarly situated men were treated more favorably or her position was filled by a man. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). If Plaintiff establishes this prima facie case, the burden shifts to Defendant to articulate some legitimate, nondiscriminatory reason for the challenged action. *Id.* If Defendant meets that burden, Plaintiff must show that the articulated reason is pretextual either through direct evidence of discriminatory intent or circumstantial evidence showing that Defendant's proffered explanation is unworthy of credence. *Id.*

Plaintiff maintains that she has easily satisfies the first two prongs, she was a female salesperson and she suffered multiple adverse employment actions, including a written warning about her attire, the transfer to Kellogg and her termination.[2] As for the third element, Plaintiff

---

[2] Plaintiff does not address specifically which "adverse employment action" she relies on for her gender discrimination claim, instead she makes a general reference to the adverse employment actions addressed in her retaliation claim. Defendant takes the view that the adverse employment action Plaintiff complains of for her gender discrimination claim was the written warning she received for not complying with the dress code.

**Memorandum Decision and Order - Page 18**

contends she performing to her employer's expectations as she was one of the top salespersons for 2002.  (*See* Bjornson Dep., Ex. 2.[3])  As for the last element, Plaintiff submits similarly situated men were treated differently on the basis that Orsi critiqued her for what she wore to work and how she wore her hair, she alleges that she was cautioned against not wearing nylons and that her nail polish and shoes were complained about.  Plaintiff contends that this behavior and "appearance standards" form the basis for her gender discrimination claim.  *See Jespersen v. Harrah's Operating Co.*, 444 F.3d 1104, 1106 (9th Cir. 2006).

Defendant contends that Plaintiff's unprofessional attire had been an ongoing issue throughout the time she worked at the Coeur d'Alene dealership.  (*See* Gunderson Dep., pp. 158-65; Crawford Dep., pp. 33-40, 49-52.)  Defendant argues that the very fact that Plaintiff's unprofessional attire had been an ongoing concern to management demonstrates that she was not performing to her employer's expectations.  Defendant further argues that Plaintiff has not demonstrated or provided any evidence that similarly situated male employees were not held to the same professional dress standards.  Defendant maintains that the written warning was not an adverse employment action because it did not affect her job responsibilities or her pay and benefits.  Lastly, Defendant submits that Plaintiff has not proven that her transfer or termination were in any way related to her work attire.[4]

---

[3] Defendant has moved to strike this exhibit.

[4] In its Motion for Summary Judgment, Defendant initially addressed the gender discrimination claim based on Plaintiff's termination for her DUI, its belief being that Plaintiff was arguing she was treated differently than similarly situated men because she was terminated for her DUI and would be contending that male employees who received DUIs were not terminated.  However, Plaintiff did not address this argument  in her Opposition to Summary Judgment and Defendant submits that that argument has been conceded.  To the extent that Plaintiff has not conceded her argument that her termination for a DUI was an act of gender discrimination, the Court finds no support for such a claim.  Defendant has presented evidence that male employees who received DUIs and had their driver's licenses revoked were similarly terminated.  There is no evidence of gender discrimination based on Plaintiff's termination for her DUI conviction.

**Memorandum Decision and Order - Page 19**

The Ninth Circuit has recognized that companies may differentiate between men and women in appearance and grooming policies. *Jespersen v. Harrah's Operating Co.*, 444 F.3d 1104, 1110 (9th Cir. 2006). The important question under Ninth Circuit law is not whether the policies are different, but whether the policy imposed on the plaintiff creates an unequal burden for plaintiff's gender. *Id.* In *Frank v. United Airlines, Inc.*, the Ninth Circuit found defendant's weight policy did not impose equal burdens on both genders. 216 F.3d 845 (9th Cir. 2000). Because the women were forced to meet the requirements of a medium body frame standard while men were required to meet only the more generous requirements of a large body frame, the court found disparate treatment. *Id.* at 854.

Even if Plaintiff has shown an adverse employment action, she has not shown that the appearance policy has created an unequal burden for her gender. Although Defendant's appearance policy and dress code were not submitted, based on deposition testimony and the written warning Plaintiff received, the police seems to have required professional attire and that hair be kept neat and combed. (*See* Bjornson Dep., Ex. 6; Bjornson Dep, pp. 105, 117, 137-38; Gunderson Dep., pp. 158-60; Crawford Dep., pp. 34-37.) Without evidence, or even allegations, that Defendant imposed an unequal burden on Plaintiff's gender, the Court does not find that a dress code and appearance policy that required professional dress and neat hair does not create an unequal burden. There is no evidence that similarly situated male employees were not held to this same standard. *See Jespersen v. Harrah's Operating Co.*, 444 F.3d 1104 (9th Cir. 2006) (finding requirement in casino's appearance policy that female employees must wear makeup did not create a prima facie case of sex discrimination and that grooming standards that differ according to gender are not facially discriminatory). Professional dress for men and women will

often involve different requirements, but that alone does not make the requirements

discriminatory.  *See Frank v. United Airlines, Inc.*, 216 F.3d 845 (9th Cir. 2000).  Nothing in the

record demonstrates that female employees were held to a more burdensome standard when it

came to appearance.  Summary judgment will be granted in favor of Defendant on this claim.

### III.
### Defendant's Motion to Strike

Defendant has moved to strike portions of Plaintiff's Affidavit (Docket No. 48).

Defendant contends that portions of this affidavit contain statements inconsistent with Plaintiff's

deposition testimony and also inadmissible hearsay statements.  Specifically, Defendant seeks to

strike ¶ 3 of the affidavit as the first two sentences refer to alleged conversations between

Plaintif and other unidentified employees concerning Orsi's reputation for "hitting on" female

employees.  Defendant maintains this is classic hearsay.  Next, Defendant seeks to strike ¶ 7

which attempts to offer Exhibit 2 as evidence.  Exhibit 2 is a spreadsheet of the ranking of Dave

Smith Motors' employees' sales for the majority of 2002.  Defendant argues that Plaintiff does

not have personal knowledge of how this document was created or of the purported facts it

contains and the proper foundation for admission has not been established.  *See Cates v.*

*Albertson's, Inc.*, 126 Idaho 1030, 895 P.2d 1223 (1995).  Lastly, Defendant maintains that ¶ 4

of the affidavit is contradictory to her prior deposition testimony.  In her deposition, Plaintiff

testified that Orsi never touched her in a sexual manner, never made any sexually suggestive

comments and never made any unwelcome sexual advances.  Defendant maintains that in ¶ 4 of

her affidavit, Plaintiff attempts to describe a factual basis for her retaliation claim and create an

issue of fact to avoid summary judgment.  *See Radobenko v. Automated Equipment Corp.*, 520

F.2d 540 (9th Cir. 1975) (describing "sham" affidavits that contradict prior sworn deposition

testimony in order to create an issue of fact).

Plaintiff contends that the first two sentences of ¶ 3 of Plaintiff's affidavit are offered not for the truth of the matter asserted but to show the effect on the state of mind of the listener.  She maintains that these statements explain her reaction to Orsi's advances.  As to ¶ 4, Plaintiff maintains that her deposition testimony and affidavit are consistent and the affidavit merely clarifies her deposition testimony, that she considered Orsi's invitations to be "advances." Defendant submits that any ambiguities or conflicts between her deposition testimony and her affidavit should be left to the jury to sort out.  *See Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 283 F. Supp. 2d 1018 (N.D. Iowa 2003).  As to Exhibit 2, Plaintiff contends that it is admissible as a party-opponent admission because it was prepared by Dave Smith Motors.  It was produced during discovery by Defendant which Plaintiff argues makes it authentic. Accordingly, Plaintiff contends that it should not be stricken.

Hearsay is a statement made outside of court offered to prove the truth of the matter asserted.  Fed. R. Evid. 801(c).  Exhibit 2 and ¶ 7 are admissible either as a party-opponent admission (Rule 801(d)(2)) or as a business record (Rule 803(6)) and will not be stricken.  As for the first two sentences of ¶ 3, although Plaintiff contends that they are being offered to show the effect on Plaintiff, the listener, and therefore not hearsay, the Court disagrees and finds they are hearsay and they will be stricken.  Lastly, the Court will not strike ¶ 4.  This paragraph does not directly contradict the deposition testimony and they both can be read consistently with one another.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS**

**HEREBY ORDERED that:**

1)      Defendant's Motion for Summary Judgment (Docket No. 40), filed April 17,

2007, be GRANTED IN PART and DENIED IN PART;

2)      Defendant's Motion Strike Portions of the Affidavit of Sheryl Bjornson (Docket

No. 51), filed May 25, 2007, be GRANTED IN PART and DENIED IN PART.

DATED: September 12, 2007

_____
Honorable Mikel H. Williams
Chief United States Magistrate Judge

**Memorandum Decision and Order - Page 23**